Edmund S.B. GILLESPIE

v.

TOWN OF SOUTHWEST HARBOR.

Supreme Judicial Court of Maine.

Argued April 1, 1996.

Decided April 25, 1996.

Stephen E. F. Langsdorf (orally), Preti, Flaherty, Beliveau & Pachios, Augusta, for Plaintiff.

Chadbourn H. Smith (orally), Eric Lindquist, Fenton, Chapman, Fenton, Smith & Kane, P.A., Bar Harbor, for Defendant.

DANA, Justice.

Edmund Gillespie appeals from a judgment entered in the Superior Court (Hancock County, *Archibald, A.R.J.*) denying his claim for unjust enrichment against the Town of Southwest Harbor. Finding no error, we affirm the judgment.

In the spring of 1988 Gillespie desired an extension of the Town's sewer main under Route 102 to a shopping plaza he was developing. Because the Department of Transportation was planning major improvements to Route 102 that summer, if the sewer was going to be built a decision needed to be made quickly.[1] DOT regulations required that any sewer construction that coincided with its construction work be approved by the Town. The Town's Board of Selectmen discussed the sewer extension at several meetings in May and June attended by Gillespie and his attorney. Among the topics discussed was a proposal that Gillespie advance the cost of the extension and the Town enter into some form of equitable pay-back arrangement. At their June 21 meeting the board voted unanimously to authorize construction of the sewer and issue a letter of intent to Gillespie regarding a pay-back arrangement. Selectman Eric Henry and Town Manager Eric Swanson testified that at the June 21 meeting Henry asked Gillespie and his attorney if they realized they might not be reimbursed, and whether they were willing to take that risk. They testified that both Gillespie and his attorney nodded their heads affirmatively.

On July 12 Swanson presented Gillespie with an agreement, paragraph four of which provided:

> To the extent it may become legally authorized to do so, the Town agrees that it will negotiate in good faith with Gillespie to establish an equitable payback agreement with Gillespie with relation to the private sewer line extension that has been authorized by the Town.

On that day construction of the sewer had commenced, although it is unclear how much work had been completed. The sewer was subsequently completed at a cost of $86,000. At the 1990 town meeting two articles requesting authority to negotiate with Gillespie concerning a pay-back were presented. Both articles were "indefinitely postponed" by vote of the meeting. Gillespie commenced suit in October 1990 on a theory of unjust enrichment. Following a two day non-jury trial the court granted a judgment in favor of the Town finding that it would not be inequitable to deny relief because the agreement be-

---

1. Pursuant to DOT regulations once the improvement project was completed no new construction would be permitted on the road for a minimum of five years. Additionally, extending the sewer coincidental to the improvement project offered significant savings because costs associated with cutting and repaving the road would be borne by the state.

tween Gillespie and the Town specifically made a potential pay-back contingent on later approval and because Gillespie also gained significant benefits from the extension.

▆▆▆ To prevail on a claim for unjust enrichment Gillespie had the burden to establish that (1) he conferred a benefit on the Town, (2) the Town had appreciation or knowledge of the benefit, and (3) the Town's acceptance or retention of the benefit was under such circumstances as to make it inequitable for them to retain the benefit without payment for its value. *ERA–Northern Assoc. v. Border Trust Co.*, 662 A.2d 243, 245 (Me.1995). The trial court's conclusions on the elements of unjust enrichment are factual findings. *Id.* We will reverse factual findings adverse to the party with the burden of proof only if the record compels a contrary conclusion. *Foley v. Adam*, 638 A.2d 718, 719 (Me.1994). There is no dispute that Gillespie has shown the first two elements of a claim for unjust enrichment.

Gillespie correctly notes that this case is controlled by our recent decisions in *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103 (Me.1994), and *Aladdin Elec. Assoc. v. Town of Old Orchard Beach*, 645 A.2d 1142 (Me.1994). In *A.F.A.B.* the trial court specifically found that A.F.A.B. had met all of the elements of its unjust enrichment claim, but denied recovery based on municipal immunity. *A.F.A.B.*, 639 A.2d at 104. We vacated, holding that

> when a plaintiff has proven that a benefit has been conferred on a municipality under circumstances that would otherwise make it inequitable for the benefit to be retained without payment were the defendant not a town or city, the plaintiff should not be barred from recovering the value of that retained benefit *solely* because the defendant is a municipality.

*Id.* at 106 (emphasis in original). We went on to state that the defendant's status as a municipality was one factor to be considered, along with whether the municipality was acting in a proprietary or governmental role, and other circumstances bearing on the question of competing equities. *Id.*

In *Aladdin* we found that the trial court's determination that it would be unjust to allow the Town to retain the benefit of the plaintiff's work on the same baseball stadium without payment for its value was not clearly erroneous. *Aladdin Elec. Assoc.*, 645 A.2d at 1144. We considered that the Town was acting in a proprietary capacity, that the Town was on notice that subcontractors could look to it for payment, and that the work benefitted the Town by allowing it to rent the stadium, thereby covering its debt service on the property, which it could not have done but for the work performed. *Id.*

▆▆▆ In the instant case the trial court took into account (a) the Town's status as a municipality, (b) the governmental capacity in which the Town was operating in permitting the extension of the sewer, (c) the testimony of Swanson that Gillespie initiated the idea of the extension, and (d) the fact that the final result, that Gillespie not be reimbursed for the extension, is a situation contemplated by the Town's own sewer ordinances. Section 502 of the ordinance states:

> If the Town does not elect to construct a sewer extension under public contract, the property owner, builder, or developer may construct the necessary sewer extension, if such extension is approved by the Governing Body [defined in section 102 as the duly elected Board of Selectmen].... The cost of sewer extensions thus made ... shall be absorbed by the developers or property owners.

Section 506 of the ordinance requires that sewer extensions installed pursuant to section 502, after inspection and approval by the superintendent of the sewer department, become the property of the Town and thereafter be maintained by the Town. That is exactly what happened in this case, except that Gillespie was able to get a commitment from the board that, in the event they were subsequently authorized to do so, they would negotiate in good faith with him regarding a pay-back arrangement. Lastly, according to the testimony of Selectmen Henry and Manager Swanson, Gillespie indicated to the board that he knew he might receive no payback and was willing to take that risk. These facts, taken together, do not compel a

conclusion that it was inequitable for the Town to retain the sewer without payment for its value.

The entry is:

Judgment affirmed.

All concurring.